## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

ASSOCIATION OF SURGICAL　　　　)
ASSISTANTS,　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　　　　　Case No. 2022CV02363
　　　　　　　　　　　　　　　　)
THE NATIONAL BOARD OF SURGICAL )
TECHNOLOGY AND SURGICAL　　　)
ASSISTING;　　　　　　　　　　　)
and　　　　　　　　　　　　　　　)
ASSOCIATION OF SURGICAL　　　　)
TECHNOLOGISTS　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　)

## FIRST AMENDED COMPLAINT

Plaintiff, Association of Surgical Assistants ("ASA" or "Plaintiff"), by and through undersigned counsel, brings this action against The National Board of Surgical Technology and Surgical Assisting ("NBSTSA") and Association of Surgical Technologists ("AST") (together NBSTSA and AST are collectively referred to as "Defendants"), and states and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction under 15 U.S.C. § 1331, 28 U.S.C.A. § 1332, and 15 U.S.C.A. § 15, and supplemental jurisdiction under 28 U.S.C. § 1367.

2. Venue is proper in this District under 28 U.S.C.A. § 1391 because Defendants are registered to conduct business in the State of Colorado, and Defendants directed and committed infringing activities into this District, or a substantial part of the events or omissions giving rise to the claims asserted occurred in this District.

1

## THE PARTIES

3.      Plaintiff is a nonprofit corporation organized and existing under the laws of the state of Colorado, having a registered place of business at 12110 N. Pecos Street, Suite 220, Westminster, CO 80234.

4.      Defendant NBSTSA is a nonprofit corporation organized and existing under the laws of the state of Colorado, having a registered principal place of business at 3 West Dry Creek Circle, Littleton, CO 80120.

5.      Defendant AST is a nonprofit corporation organized and existing under the laws of the state of New York and authorized to conduct business in the state of Colorado, having a registered place of business at 6 West Dry Creek Circle, Suite 200 Littleton, CO 80120.

## FACTUAL BACKGROUND

6.      NBSTSA is the only certifying board for Certified Surgical Technicians ("CST") and Certified First Surgical Assistants ("CSFA") in the United States.  Affidavit of Gregory Salmon at ¶7 attached hereto as Exhibit 1, and incorporated herein by reference.

7.      NBSTSA's certification for CSTs and CSFAs is nationally recognized and is mandatory in at least 10 states.  Affidavit of Gregory Salmon at ¶ attached hereto as Exhibit 1, and incorporated herein by reference.

8.      According to AST's website, the following states have passed laws related to the education and certification of surgical technologists:

- Idaho (1991)

- Indiana (2009)

- Massachusetts (2012)

- Nevada (2017)

- New Jersey (2011)

- New York (2015)

- Oregon (originally passed 2016, amended 2022

- Pennsylvania (2020)

- South Carolina (2008)

- Tennessee (2013)

- Texas (2009)

- Virginia (2021)

And the following states require surgical technologists to register in order to work in the state:

- Colorado (2016) (CST not required for registration)

- North Dakota (2011) ("unlicensed Assistive Person" registry: CST not required for registration)

https://www.ast.org/Public_Policy/Legislative_Overview/

9.      According to NBSTSA's website, Certification as a Surgical technician or Surgical First Assistant demonstrates that "the individual meets the national standard for knowledge that underlies surgical technologist and surgical first assistance practice." www.nbstsa.org

10.     While the CST and CSFA remain voluntary certifications for surgical technologists and surgical first assistants in the majority of states, obtaining certified status is a valuable asset for those in the profession because "[c]ertification is a means for upward mobility, a condition for employment, a route to higher pay, and a source of recognition nationwide." *Id.*

11.     According to NBSTSA, the NBSTSA currently certifies 60,000 CSTs and CSFAs across the nation and administers its exam to roughly 11,000 candidates nationwide per year. https://www.arcstsa.org/arcstsa-ast-nbstsa-joint-statement-for-surgical-technology-program-directors/

12.     Once obtaining certification, both CSTs and CSFAs must renew their certification every two to four years (depending on what cycle they are in) by completing a minimum number

of continuing education credits per cycle. For CSFAs, they must complete 38 credits for each two-year cycle, of 75 credits in each four-year cycle. https://www.nbstsa.org/renewals-recertification

13.     Therefore, continuing education is mandatory for all CSTs and CSFAs.

14.     According to NBSTSA's website, only AST may approve continuing education credits for both CSTs and CSFAs. *Id.*

15.     AST and NBSTSA enjoy a mutually beneficial relationship by which NBSTSA ensures AST has the sole authority to approve and process all continuing education credits for CSFAs and CSTs nationwide, while AST lobbies state legislatures on behalf of NBSTSA to pass state laws requiring NBSTSA certification for all surgical technicians. Affidavit of Gregory Salmon at ¶39, attached hereto as Exhibit 1, and incorporated herein by reference. https://www.ast.org/Public_Policy/Legislative_Overview/

16.     Before its parting with AST, ASA has also lobbied state legislatures on behalf of NBSTSA to pass laws requiring the NBSTSA certification for all surgical assistants. *Id.*

17.     ASA's active voting membership is comprised of individuals who have obtained their CSFA, most of whom also possess the CST certification.

18.     While ASA is open to individuals who hold only a CST, those individuals may only join as non-voting associate members.

19.     According to AST's website, AST is the professional association for surgical technologists and ASA is the professional association for surgical assistants. https://www.ast.org/AboutUs/Related_Organizations/

20.     A major benefit of membership in an association like AST or ASA is the association's ability to approve, process, and record continuing education credits for its members. These organizations also advocate on behalf of their members before state legislatures and ensure

uniform standards for their professions. www.ast.org

21.     Until December 2020, ASA was affiliated with AST.

22.     Until December 2020, ASA and AST had a business agreement whereby ASA members could earn continuing education and credential renewal credits through AST.

23.     Until December 2020, AST provided, approved, processed, and recorded continuing education credits for ASA members through this business agreement at no additional cost.

24.     AST was and is accredited as a provider of continuing education and credential renewal credits by NBSTSA.

25.     AST was and is the only accredited provider of continuing education and credential renewal credits for surgical assistants and surgical technologists.

26.     NBSTSA is the only agency that provides accreditation for continuing education and renewals of the Certified Surgical Technologist and Certified Surgical First Assistant national credentials.

27.     AST and NBSTSA have enjoyed a longstanding mutually beneficial relationship.

28.     AST has appointment authority for five (5) of the eleven (11) NBSTSA board positions and holds tremendous influence over and input into NBSTSA decision-making policies and practices.

29.     AST and NBSTSA work collaboratively on the development of the Policies for Approval of Continuing Education Programs.

30.     After ASA determined its affiliation with AST was no longer in the interests of its members, ASA terminated its relationship with AST in December 2020.

31.     Since December 2020, ASA and AST are distinct and separate entities servicing

the needs of two distinct professional groups, as ASA remains the professional organization for surgical assistants and AST remains the professional association for surgical technologists.

32.     Since splitting with AST, ASA has attempted to offer its members continuing education credits and credential renewal services but has been unsuccessful in seeking accreditation from NBSTSA and AST.

33.     ASA has repeatedly attempted to be accredited by NBSTSA, in the same manner, NBSTSA has accredited AST – that is NBSTSA allows ASA to approve, process, and record continuing education credits for CSFAs and CSTs.

34.      On or about September 15, 2021, ASA contacted NBSTSA to be recognized as an approver and processor of continuing education credits on behalf of NBSTSA.

35.     NBSTSA communicated this request to AST, which collaborates with NBSTSA on all matters related to continuing education.  Together NBSTSA and AST developed a response to ASA's request.

36.     On or about October 22, 2021, Jeff Bidwell ("Mr. Bidwell") and Ben Price ("Mr. Price"), NBSTSA's President and CEO, respectively, responded to the request on behalf of NBSTSA.

37.     NBSTSA's response provided two options for ASA.

38.     The first option was to avoid "reinventing the wheel," whereby ASA could negotiate an arrangement with AST for AST to continue processing the continuing education credits for ASA members, just as it did before December 2020.

39.     The other option was for ASA to provide NBSTSA with substantial proprietary and financial information without any indication that the provision of this information was required for the accrediting process.

40.     Indeed, after ASA questioned the relationship between the requested information and the accreditation process, Mr. Price, on behalf of NBSTSA, responded on February 23, 2022, "NBSTSA has not proposed any 'approval process' for ASA at this time" and further clarified the previous requests for information "did not define any process that ASA could or should meet."

41.     Mr. Price also reaffirmed NBSTSA's position that "the only real pathway for ASA is to work with AST to approve and process credits for CSFAs."

42.     Under NBSTSA's proposal, ASA members would be required to pay AST additional sums to earn and process continuing education credits.

43.     In other words, under AST's direction or influence, NBSTSA has refused to even consider ASA as a processer and provider of continuing education credits and has refused to provide ASA with any guidelines, criteria, or any other pathway for ASA to become an independent and accredited provider of continuing education to its members.

44.     NBSTSA's refusal to provide any criteria by which ASA could obtain accreditation under NBSTSA's standards prevents ASA from even attempting to pursue accreditation.

45.     NBSTSA's refusal to provide any criteria by which ASA could obtain accreditation under NBSTSA's standards amounts to a refusal to accredit ASA without cause or justification.

46.     NBSTSA's refusal to accredit or otherwise provide any criteria by which ASA could obtain accreditation under NBSTSA's standards results in AST being the sole national provider and processor of continuing education credits for surgical technicians and surgical assistants without competition in the marketplace.

47.     Defendants' actions restrict ASA from competing with AST in the marketplace for providing and processing continuing education credits for CST and CSFA recertification for

certification holders across the nation.

48.     Defendants' actions also prevent ASA from offering CSFAs and CSTs a meaningful alternative professional association to support their chosen professions, as ASA is unable to offer similar services as AST in the processing and recording of continuing education credits essential to CSFA and CST recertification.

49.     Currently, CSFAs must pay membership dues to ASA to belong to the professional association for their profession, and also pay dues or fees to AST simply to process and record their continuing education credits necessary for recertification.

50.     Moreover, Defendants' actions seek to maintain the status quo coupled with an additional new revenue stream from ASA members paying a fee to AST for the processing and recording of continuing education credits.

51.     Defendants' efforts to prevent ASA from obtaining accreditation under NBSTSA's standards devalue the benefit of ASA to its members and deprive ASA of a critical revenue stream. Moreover, it diverts additional funds away from ASA to AST.

52.     Providing, processing, and recording continuing education requirements is crucial to ASA's ability to retain and gain new members.

Defendants' attempts to push ASA back to AST are deliberate and intentional, as evidenced by NBSTSA's repeated requests that ASA direct its members back to AST for continuing education credits.

## <u>COUNT I</u>
## 15 U.S.C.A. §§ 1, 15 (NBSTSA and AST)

53.     Plaintiff adopts and incorporates the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

54.     Defendants, by agreement, as evidenced by the October 22, 2021, letter, prevented

ASA from obtaining, let alone applying for, accreditation.

55.     By agreement, Defendants engaged in anticompetitive conduct designed to keep AST as the sole provider and processor of continuing education credits for surgical technicians and surgical assistants.

56.     As the October 22, 2021, letter and the subsequent February 23, 2022, correspondence demonstrate, Defendants acted to cause NBSTSA to effectively boycott ASA.

57.     Defendants' actions have caused an unreasonable restraint on trade in the market space for providing, approving, processing, and recording continuing education credits necessary for recertification of CSTs and CSFAs by ensuring that AST is the sole provider of these services in the nation.

58.     Defendants' actions have damaged ASA by devaluing the ASA membership and have prevented ASA from engaging in its business of providing, approving, processing, and recording continuing education credits for its members.

59.     Defendants' actions have damaged ASA by injuring the reputation of ASA amongst its members and prospective members.

WHEREFORE ASA requests this Court's determination that Defendants' actions constitute restraint of trade and that damages including attorney's fees and costs enter in an amount to be proven at trial.

## COUNT II
### 15 U.S.C.A. §§ 1, 15, (Agreement in Restraint of Trade – Unreasonable Tying)
### (AST and NBSTSA)

60.     Plaintiff adopts and incorporates the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

61.     NBSTSA by its actions has implicated Section 1 of the Sherman Act, 15 U.S.C. 1,

by requiring its membership to pay an additional membership fee to AST to permit accreditation.

62.     Specifically, in correspondence dated October 22, 2021 from NBSTSA to ASA,

Jeff Bidwell and Ben Price, stated:

> The NBSTSA's understanding is that *all* AST member benefits have been provided to ASA members as part of the dual membership for $50 per member. If all that you were asking AST to do is provide the CE services maybe ASA could negotiate a lower fee? *That might be a lot less complicated and expensive than trying to duplicate or reinvent the CE system that AST has managed for 50 years*.

(emphasis added).  A true and correct copy of the October 22, 2021 letter is attached hereto as Exhibit B to Exhibit 1, the Affidavit of Gregory Salmon, and incorporated herein by reference.

Later in the letter, the inquiry followed:

> o   Continuing education offerings – AST has over 500 online CE available, a monthly journal, an annual conference, and state assembly meetings in all states (about 100 per year) where their members are able to earn the credits they need for renewal.
> o   Has ASA developed any online CE availability and if so, how many credits are available?
> o   How many ASA members regularly attend your meetings? For example, what were ASA attendance number in 2019, 2020, and 2021?
> o   Overall, how would an ASA member earn the required credits to renew every two years?

> • How would ASA address market forces which may drive the CST/CSFA to remain a part of AST for $80 per year rather than joining ASA for $175? What are the services and benefits that ASA is providing that would motivate members to pay almost $100 more than AST membership?

63.     In subsequent correspondence dated February 23, 2022, Ben Price corresponded

again with ASA.  A true and correct copy of the February 23, 2022, letter is attached hereto as

Exhibit 2 and incorporated herein by reference.  In the correspondence Mr. Price state:

> NBSTSA has not proposed any "approval process" for ASA at this time. Our letter of October 22, provided two things to ASA:

>> 1. Our suggestion that *ASA should approach AST, who is the only organization recognized by NBSTSA, to process and record CE for certification renewal to ASA for your members*; and

2. We provided you with a list of detailed response items (16 items) that we would need from ASA in order for us to be able to answer the questions you asked of us in your September 15, 2021 letter – *these were our questions and did not to define any process that ASA could or should meet*.

We continue to believe the *only real pathway for ASA is to work with AST* to approve and process credits for CSFAs, for all the reasons we outlined in our October letter.

The mention of discounts in the candidate handbook was a typo and has been corrected at this time. *The gold packages are a longstanding business agreement with AST, and that is available to schools and students as always. We aren't administratively able to process member discounts for multiple reasons, outlined in our letter from Octobe*r.

(emphases added).

64.     NBSTSA and AST have the market power in the in the CFSA and CSA market domain and has used this power to, by implication, condition the certification to ASA's membership on the purchase of a separate membership into AST, the organization with whom ASA recently completed separating from for the benefits of its members.

65.     The mandate to have its members join AST is reflected by Mr. Price and Mr. Bidwell in the October 22, 2021 letter, when even they acknowledge the harm to competition in the market for CE certification for CFSAs and CSAs.

66.     NBSTSA's conduct had a substantial effect on interstate commerce in the certification as CFSAs and CSAs in that market.

WHEREFORE ASA requests this Court's determination that Defendants' actions constitute restraint of trade and that damages including attorney's fees and costs enter in an amount to be proven at trial.


### COUNT III
### Clayton Act, Section 3 – Unreasonable (Rule of Reason) Forced Tying
### (AST and NBSTSA)

67.     Plaintiff adopts and incorporates the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

68.     AST's product – that is, membership, relates to certification of Surgical Technicians as described above.  It has a separate audience/membership than ASA, which supports CFSAs and CSAs.

69.     NBSTSA in conjunction with AST has tied the approval of accredited programs and certification as a Surgical First Assistant and Surgical Assistant to the purchase of an AST membership in violation of Section 3 of the Clayton Act 15 U.S.C. § 14.

70.     AST and NBSTSA have market power in the accrediting  of CFSAs and CSAs and has used that power to condition the accrediting on forcing the members of ASA to the purchase AST membership to become certified or maintain certification.

71.     The arrangement has the impact of eliminating ASA from the marketplace and suppressing other competitors thus substantially lessening competition in the market.

72.     AST and NBSTSA acknowledged they are national organizations and their conduct had a substantial effect on interstate commerce in the accrediting of CFSAs and CSAs.

WHEREFORE ASA requests this Court's determination that Defendants' actions constitute restraint of trade and that damages including attorney's fees and costs enter in an amount to be proven at trial.

## COUNT IV
## 15 U.S.C.A. §§ 2, 15 (Against NBSTSA and AST)

73.     Plaintiff adopts and incorporates the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

74.     By agreement, Defendants caused NBSTSA to exclude ASA from seeking

accreditation as a provider and processor of continuing education credits for surgical technicians and surgical assistants.

75.　As a result, Defendants ensured AST maintains the entire market share for providing, processing, and recording continuing education credits for surgical technicians and surgical assistants nationwide.

76.　NBSTSA has a longstanding relationship with AST, as referenced in the October 22, 2021, letter. Defendants stand to benefit by keeping AST as the sole provider and processor of continuing education credits for surgical technicians and surgical assistants.

77.　NBSTSA acts as the gatekeeper to the market and maintains complete control over who may or may not offer services essential to the recertification of CSFAs and CSTs – namely approving, providing, and processing and recording necessary continuing education credits.

78.　By refusing to allow ASA to apply for accreditation, Defendants have created a monopoly in favor of AST by ensuring AST retains one hundred percent of the market share for providing, processing, and recording continuing education credits essential for recertification of CSTs and CSFAs nationwide.

WHEREFORE ASA respectfully requests this Court enter an order that Defendants are participating to create a monopoly to and for the benefit of AST and to the exclusion of ASA and any other competitors and that this Court enter damages as proven at trial including attorney's fees and costs, and for such other and further relief as is just and appropriate under the circumstances.

## COUNT V
**Sherman Act Section 2, Monopolization of the market for certifying CFSAs and CSAs (NBSTSA and AST)**

79.　Plaintiff adopts and incorporates the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

80.     NBSTSA and AST possess monopoly power in the market for certifying CFSAs and CSAs.

81.     Through their anticompetitive conduct described herein, namely forced tying, they have willfully acquired and maintained monopoly power in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

WHEREFORE ASA respectfully requests this Court enter an order that Defendants are participating to create a monopoly to and for the benefit of AST and to the exclusion of ASA and any other competitors and that this Court enter damages as proven at trial including attorney's fees and costs, and for such other and further relief as is just and appropriate under the circumstances.

## COUNT VI
### Sherman Act Section 2 Attempted Monopolization of the CFSA and CSA Accreditation Market (NBSTSA and AST)

82.     Plaintiff adopts and incorporates the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

83.     NBSTSA and AST possess monopoly power in the market for certifying CFSAs and CSAs.

84.     NBSTSA and AST acted with the specific intent to monopolize and harm competition in the market for accreditation of CFSAs and CSAs.

85.     Being the only "game in town" there is a dangerous probability that NBSTSA and AST will succeed in obtaining a monopoly and harming competition in the market for accreditation of CFSAs and CSAs market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

WHEREFORE ASA respectfully requests this Court enter an order that Defendants have created and are attempting to maintain a monopoly to and for the benefit of AST and to the

exclusion of ASA and any other competitors and that this Court enter damages as proven at trial including attorney's fees and costs, and for such other and further relief as is just and appropriate under the circumstances.

**COUNT VII**
**15 U.S.C.A. § 26 (Against Defendants)**

86.     Plaintiff adopts and incorporates the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

87.     As set forth above, Defendants have violated the US antitrust laws.

88.     ASA has suffered damages in the form of lost revenue and injury to its reputation with its members and prospective members due to Defendants' actions.

89.     ASA is entitled to injunctive relief by requiring Defendant to provide ASA with the specific criteria required for ASA to apply for accreditation and requiring NBSTSA to give objective consideration to ASA's application for accreditation

WHEREFORE ASA seeks this Court's order enjoining or otherwise compelling NBSTSA to provide ASA with specific criteria required for ASA to apply for accreditation and requiring NBSTSA to give objective consideration to ASA's application for accreditation, and for such other and further relief as is just and appropriate under the circumstances.

**COUNT VIII**
**Colorado Antitrust Act – C.R.S. § 6-4-104 (Against AST and NBSTSA)**

90.     Plaintiff adopts and incorporates the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

91.     Pursuant to C.R.S. § 6-4-104, "[e]very contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce is illegal."

92.     Under C.R.S. § 6-4-114, any "Person," as defined in C.R.S. 6-4-103(3), injured by

violation of the Colorado Antitrust Act (C.R.S. 6-4-101 et seq.) has standing to pursue a civil claim.

93.     Pursuant to C.R.S. § 6-4-105, "[i]t is illegal for any person to monopolize, attempt to monopolize, or combine or conspire with any other person to monopolize any part of trade or commerce."

94.     Defendants, by agreement, , prevented ASA from obtaining, let alone applying for, accreditation.

95.     By agreement, Defendants engaged in anticompetitive conduct designed to keep AST as the sole entity capable of providing, approving, processing, and recording continuing education credits for surgical technicians and surgical assistants.

96.     As the October 22, 2021, letter and the subsequent February 23, 2022, correspondence demonstrate, Defendants agreed to cause NBSTSA to effectively boycott ASA.

97.     Defendants' actions have caused an unreasonable restraint on trade in the market space for recertifying CSFAs and CSTs for surgical technicians and surgical assistants by ensuring AST maintains the sole authority to provide, approve, process, and record the continuing education credits for CSFAs and CSTs in the nation.

98.     Defendants' actions have damaged ASA by devaluing the ASA membership and have prevented ASA from engaging in its business of providing recertification services for surgical assistants holding CSFAs and CSTs.

99.     Defendants' actions have damaged ASA by injuring the reputation of ASA amongst its members and prospective members.

WHEREFORE ASA requests this Court's determination that Defendants' actions constitute restraint of trade and that damages, including attorney's fees and costs, enter in an

amount to be proven at trial.

<b><u>COUNT IX</u></b>

<b>Colorado Antitrust Act – C.R.S. §6-4-105 (Against NBSTSA and AST)</b>

100.     Plaintiff adopts and incorporates the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

101.     Pursuant to C.R.S. § 6-4-104, "[e]very contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce is illegal."

102.     Under C.R.S. § 6-4-114, any "Person," as defined in C.R.S. 6-4-103(3), injured by violation of the Colorado Antitrust Act (C.R.S. 6-4-101 et seq.) has standing to pursue a civil claim.

103.     Pursuant to C.R.S. § 6-4-105, "[i]t is illegal for any person to monopolize, attempt to monopolize, or combine or conspire with any other person to monopolize any part of trade or commerce."

104.     By agreement, Defendants caused NBSTSA to exclude ASA from seeking accreditation as a provider and processor of continuing education credits for surgical technicians and surgical assistants.

105.     As a result, Defendants ensured AST maintains the entire market share for providing and processing continuing education credits for surgical technicians and surgical assistants nationwide.

106.     NBSTSA has a longstanding relationship with AST, as referenced in the October 22, 2021, letter. NBSTSA stands to benefit by keeping AST as the sole provider and processor of continuing education credits for surgical technicians and surgical assistants.

107.     By preventing ASA from applying for accreditation, Defendants have created a monopoly in favor of AST by ensuring AST retains one hundred percent of the market share for

providing and processing continuing education credits for surgical technicians and surgical assistants nationwide.

WHEREFORE ASA respectfully requests this Court enter an order that NBSTSA is participating in combination with AST to create a monopoly to and for the benefit of AST and to the exclusion of ASA and any other competitors and that damages including attorney's fees and costs as demonstrated at trial be awarded to Plaintiff, and for such other and further relief as is just and appropriate under the circumstances.

## COUNT X
### Colorado Antitrust Act – C.R.S. § 6-4-113 (Injunctive Relief against NBSTSA)

108.    Plaintiff adopts and incorporates the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

109.    Defendants have violated the Colorado antitrust laws.

110.    Defendants' actions are ongoing.

111.    ASA has suffered damages in the form of lost revenue and injury to its reputation with its members and prospective members due to Defendants' actions.

112.    ASA is entitled to injunctive relief by requiring Defendants to provide ASA with the specific criteria required for ASA to apply for accreditation and requiring NBSTSA to give objective consideration to ASA's application for accreditation

WHEREFORE ASA seeks this Court's order enjoining or otherwise compelling Defendants to provide ASA with specific criteria required for ASA to apply for accreditation and requiring NBSTSA to give objective consideration to ASA's application for accreditation, and for such other and further relief as is just and appropriate under the circumstances.

## COUNT XI

**Tortious Interference with Business Relations and Prospective Business Advantage**
**(Against NBSTSA and AST)**

113.   Plaintiff adopts and incorporates the allegations of each of the preceding paragraphs of this Complaint as if fully set forth herein.

114.   ASA is identified by Defendants as the professional association for surgical assistants, which includes those surgical assistants who obtained their CSFA credential.

115.   Accordingly, ASA has ongoing business relationships with its members who hold CSFA certifications and holds prospective business relationships with those individuals who have obtained or are in the process of obtaining their CSFA who have not yet joined ASA.

116.   As the professional association for CSFAs, the value of an ASA membership for its members is largely driven by ASA's ability to provide, approve, process, and record continuing education credits for its members so they may maintain their certification.

117.   The direct result of Defendants actions denying ASA even the opportunity to seek accreditation discredits and devalues membership in the ASA.

118.   ASA members are currently required to pay an additional membership fee to AST to approve, process and record continuing education credits for recertification even though AST is the professional organization for surgical technologists.

119.   As a result, ASA has sustained attrition of its members, opting to not renew their ASA membership as ASA has been unable to provide, approve, process, or record their continuing education credits and is therefore unable to provide essential recertification services.

120.   In addition, new membership enrollment is down because several new CSFA holders opt to join AST over ASA because of recertification services offered by AST that ASA cannot provide.

121.   Defendants concerted efforts to prevent ASA from obtaining accreditation is

intentional and is intended to cause ASA financial injury in the form of decreased revenue from membership fees.

122.    Defendants are aware of the importance that recertification services for individuals determining whether they wish to join ASA or AST or maintain their membership with AST.

123.    As discussed above, Defendants have tortiously interfered with ASAs ability to retain and recruit new membership and ASA's ability to provide accreditation by usurping prospective business advantage by forcing accreditation through AST or otherwise be subject to the approval of AST, a separate legal entity from Plaintiff.

124.    Defendants' actions tortiously interfere with the business of ASA and its membership by requiring concomitant commitment to a separate organization, AST, and in precluding accreditation separate and apart from the approval of AST.

125.    Defendants' actions were malicious and wrongful and were neither justified, privileged, nor excusable.  Defendants' actions have caused irreparable injury to ASA and are designed to threaten ASA's long-term viability

WHEREFORE, Defendants' tortious interference with business relations have damaged the Plaintiff and that this Court enter an award of damages including attorney's fees and costs in an amount determined after trial, and for such other and further relief as is just and appropriate under the circumstances.

Respectfully submitted on December 13, 2022, by:

CASTLE, LANTZ, MARICLE, LLC

*/s/ Robert D. Lantz*
Robert D. Lantz #30825
Eric Massof #52195
4100 E. Mississippi Ave., Ste 410
Denver, CO 80246
rlantz@clmatty.com
emassof@clmatty.com
*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on <u>December 13, 2022</u>, a true and correct copy of the foregoing was filed electronically via the Colorado Courts E-Filing system and e-served upon all active parties of record.

*/s/ Louis Marcell*
Louis Marcell, Paralegal